Ex parte Jimmy Lay 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-031-CV

EX PARTE JIMMY LAY
                                        

Original Proceeding
                                                                                                    

O P I N I O N
                                                                                                    

      In this original habeas corpus proceeding, Jimmy Lay contends that the civil contempt order
under which he was confined is void. Upon presentation of Jimmy's petition, this court ordered
him released on a $5000 bond. After hearing oral argument and reviewing the points raised in the
petition, however, we now determine that the writ should not be granted and that Jimmy should
be remanded to custody.
      The trial court found Jimmy in contempt for violation of an agreed divorce-decree provision
requiring him to pay to his former wife, Leisa Lay, one-half of the balance of his profit sharing
and retirement plan with his employer, calculated as of the date of the divorce. In support of the
order of contempt, the trial court cited the retirement-plan provision of the divorce decree and
found that, "on December 29, 1993, Texas Plantation Foods Company issued a check payable to
Jimmy in the amount of $10,295.62," which was "the full amount of his profit-sharing and pension
plan as of the date of the termination of his employment, including that amount set aside to [Leisa]
by the terms of the Divorce Decree." The court further found that, "as of the date of the [divorce
decree], the total amount of funds on deposit in [his] pension and profit-sharing plan . . . was
$3598.86; thus under the terms of the Divorce Decree, the sum of $1799.43 was set aside to Leisa
Lay but remained in the possession of Jimmy Lay as Trustee for Leisa Lay." Finally, the court
found that "Jimmy Lay wholly failed to pay over to Leisa Lay the sum of $1799.43, which were
funds held by Jimmy Lay, as Trustee for Leisa Lay."
      In point one Jimmy contends that the contempt order is void because the underlying divorce
decree is not enforceable by contempt. For an individual to be held in contempt for disobeying
a court order, the order must set forth the details of compliance in clear, specific, and
unambiguous terms so that the person will know exactly what duties or obligations are imposed
upon him.


 In Ex parte Graham the court of appeals applied a reasonable-person standard in
determining whether the underlying court order was ambiguous:
[T]here is no ambiguity in the underlying temporary orders. The facts in this case are
easily distinguishable from Ex parte Slavin, 412 S.W.2d 43 (Tex. 1967), where it was
possible to construe the underlying court order in more than one way with more than one
meaning. In the case before us, the underlying order can be read only one way and
relator was given adequate notice of his obligations. Although no payee, due date, or
amount are specified in the order, a reasonable person in relator's position would know
the details of the house payments or he could determine them with minimal inquiry. 
Additionally, there is no need for the degree of precision required of orders under Tex.
Fam. Code Ann. § 14.33 which is related solely to the enforcement of orders for child
support. See Ex parte Boykins, 764 S.W.2d 590 (Tex. App.—Houston [14th Dist.] 1989,
original proceeding).




      Furthermore, the court in Ex parte Wessell held that, although no dates were specifically
recited as to when relator would receive checks or in what amount they would be received,
because a reasonable person in the relator's position should know when he receives his paychecks
and their amounts, a reasonable person should be able to ascertain, with minimal inquiry, any
details necessary to comply with such an order.



      The underlying order in this case, the November 27, 1987, agreed divorce decree, awarded
the following as Leisa's sole and separate property:
. . . .
(7.) One half of the profit sharing and retirement plan of Jimmy Lay with Texas
Plantation Foods Corporation. The amount of the balance of the profit sharing plan shall
be calculated as of the date of the order. [Jimmy] shall have possession of said sum as
trustee for [Leisa] until such time as the funds can be withdrawn and not affect the
participation of Jimmy Lay in said program, according to the rules of said plan. [Jimmy]
shall withdraw the amounts due to [Leisa] and shall deliver said sum to [Leisa] within 5
days of the time set forth above.
. . . .

      Jimmy complains that the retirement plan provision in the divorce decree was unenforceable
by contempt because it failed to spell out the details of compliance in clear, specific, and
unambiguous terms.


 Specifically, he contends that the time and manner of payment were not
sufficiently clear and that the amount of payment was ambiguous. At the contempt hearing, David
Cartwright, the pension plan compliance manager for Plantation Foods, testified that as of
November 20, 1987, Jimmy had contributed $1893.81 to the plan, and that the total amount of the
balance of his profit sharing account, including the then unvested employer contributions, was
$3598.86. Nevertheless, Jimmy argues that the retirement plan provision is ambiguous because
it did not specify whether the "amount of the balance of the profit sharing plan," "calculated as
of the date of the order," included employer contributions which later became vested.
      In Ex parte Filemyr the court of appeals held that a provision dividing the husband's
retirement plan between the parties was unenforceable because it merely divided the benefits,
without expressly directing the relator to deliver the wife's portion of the proceeds to her.


 In Ex
parte Hovermale, however, the court of appeals held that the trial court had the power to hold the
husband in contempt of court for refusing to obey a provision of a divorce decree directing him
to pay to the wife funds which he held as trustee and to which the wife was legally entitled.



      The retirement plan provision at issue in this case specifically directed Jimmy "to deliver"
"[o]ne half of [his] profit sharing and retirement plan," "calculated as of the date" of the divorce
decree, to Leisa "within 5 days of the time" "the funds can be withdrawn" without affecting his
participation in the program. A court order need not be "full of superfluous terms and
specifications adequate to counter any flight of fancy a contemner may imagine in order to declare
it vague."


 Although Cartwright testified that he could calculate the amount of the retirement
account either including or omitting the employer contributions and with or without interest, he
consistently testified that the amount in Jimmy's account on November 20, 1987, was $3598.86. 
Because the divorce decree expressly directed Jimmy to deliver Leisa's portion of the retirement
fund to her, and because a reasonable person should be able to ascertain, with minimal inquiry,
"the amount of the balance of the profit sharing plan" as of the date of divorce, we hold that the
retirement plan provision was enforceable by contempt.


 Therefore, we overrule point of error
one.
      In point two Jimmy contends that the contempt order is void because he presented evidence
that "he was ill and commitment was a present and immediate hazard to his health." For
authority, he cites only article 11.25 of the Texas Code of Criminal Procedure. According to
article 11.25:
When a judge or court authorized to grant writs of habeas corpus shall be satisfied,
upon investigation, that a person in legal custody is afflicted with a disease which will
render a removal necessary for the preservation of life, an order may be made for the
removal of the prisoner to some other place where his health will not be likely to suffer;
or he may be admitted to bail when it appears that any species of confinement will
endanger his life.




      Jimmy's brief provides no argument suggesting how this provision entitles him to relief. 
First, we note that Chapter 11 of the Code of Criminal Procedure, under which trial courts and
the Court of Criminal Appeals may grant relief to a prisoner, does not apply to the courts of
appeals.


 Second, Jimmy, who has been released on bail, is not currently a prisoner. Finally,
the testimony of Jimmy's current wife, Carla Lay, that if he were to be put in jail, "He'd probably
end up back in the hospital," is insufficient to satisfy this court that removal from custody is
necessary for the preservation of his life. Accordingly, we overrule point of error two.
      In point three Jimmy contends that the contempt order is void because he "proved conclusively
at the hearing he was not able to perform the condition for purging contempt." To establish the
defense of impossibility of performance in civil contempt, the relator must have conclusively
demonstrated at the contempt hearing that he did not then have, and had no source from which to
obtain, the amount due.


 Jimmy has failed to meet this burden. In support of this defense, Jimmy
relies solely on the testimony of his wife, Carla Lay. Carla testified that they do not have any
money set aside from the retirement fund distribution, stating that "it went quick." She also
testified that Jimmy does not have any money "that he can pay this retirement benefit off with,"
that he is not able to work, that they had tried unsuccessfully to borrow money to pay the
obligation, that they did not have enough property to sell to pay it, and that neither her parents nor
Jimmy's parents were capable of loaning them enough money to pay the amount due. However,
her testimony was not without substantial contradiction.


 For example, Carla testified that, since
they received the check from Plantation Foods, they have purchased some new rings for her, a
new water bed for her daughter, and some "household stuff," including a vacuum cleaner, as well
as hiring an attorney. In addition, she testified that they have received support from her family
and his family since their marriage last year. According to Carla, they repaid some of the loans
from their families when they received the retirement funds. Furthermore, Carla testified that they
still rely on their friends and family to help them. Finally, she testified that they could have paid
$700 because that was what they expected Leisa's share of the fund to be. Despite Carla's
testimony of various assets and resources from which Jimmy could pay all or part of the $1799.43
held in trust for Leisa, he has made no effort to purge himself of contempt. Because Jimmy's
defense of inability to pay was not conclusively established by the record, we overrule point of
error three.
      We deny Jimmy Lay's petition for writ of habeas corpus and remand him to the Sheriff of
McLennan County for confinement in accordance with the trial court's order of commitment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Petition for writ of habeas corpus denied
Opinion delivered and filed June 8, 1994
Do not publish